HELEN D. ADAMS, Respondent, *v.* THE IRVING NATIONAL BANK OF NEW YORK, Appellant.

A wife may avoid a contract induced and obtained by threats of imprisonment of the husband and it is immaterial whether the threat is of lawful or unlawful imprisonment.

*It seems* the same rule applies to a husband where the threat is of the arrest of the wife, or to a parent or child, in case of threats to arrest the other.

Where, therefore, plaintiff was induced, by a threat of her husband's arrest, to pay a debt due from him to defendant, *held*, that an action was maintainable to recover back the moneys paid as obtained by undue influence; that it was immaterial whether or not there was a lawful ground for the arrest; that the payment was not a voluntary one and the defendant obtained no title to the money received.

Defendant claimed that plaintiff had subsequently ratified the payment. The trial court charged the jury that before there could be a ratification to prevent a recovery there must be some distinct act of plaintiff, after knowledge of the facts and knowledge by her that she had a right to rescind, to which defendant took a general exception. *Held*, that the charge was correct in part, at least, and the defendant not having suggested any qualification, a general exception thereto could not be sustained.

The point was raised on appeal that the transaction was the compounding of a felony, and so the money paid could not be recovered back. *Held*, as the question was not raised upon trial and was not presented by any appropriate exception, it could not be raised here.

*Metropolitan Ins. Co.* v. *Meeker* (85 N. Y. 614); *Haynes* v. *Rudd* (83 id. 251; 102 id. 372); *Sollinger* v. *Earle* (82 id. 393); *Smith* v. *Rowley* (66 Barb. 502); *Farmer* v. *Walter* (2 Edw. Ch. 601); *Knapp* v. *Hyde* (60 Barb. 80); *Dunham* v. *Griswold* (100 N. Y. 224); *Quincey* v. *White* (63 id. 370), distinguished.

(Argued October 24, 1889; decided December 3, 1889 )

APPEAL from judgment of the General Term of the Superior Court in the city of New York, entered upon an order made the first Monday of December, 1886, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and affirmed an order denying a motion for a new trial.

This action was brought to recover money claimed to have been obtained from the plaintiff by threats, coercion and undue influence.

The facts out of which it arose are as follows : The plaintiff is the wife of Jay L. Adams, who was adjudged a bankrupt in

1878. The defendant was a creditor of Adams to the amount of several thousand dollars. Adams' health was broken as a result of his misfortunes, and the plaintiff had been advised to go with him to Europe, and their passage had been engaged for June 17, 1879. Shortly prior to this date Adams was examined in the bankrupt court by counsel for the defendant and the fact was developed that an entry on the stub of his check book, which read "F. Munoz, taxes and expenses," did not relate to any "taxes or expenses," and that Munoz was merely the messenger who received the money from the bank, the check having been payable to bearer. That Adams had received the money and had delivered it to a Mr. Warner with a request that it be kept for him, and at the time of the examination it was still in Warner's possession. Adams claimed that, in secreting this money, his intention was to pay an indebtedness to the widow of his brother. It had not been applied to that purpose, and he admitted, had it not been discovered, he might have changed his mind and applied it to other purposes. The money was obtained from Warner after this disclosure and delivered to the assignee in bankruptcy. A few days before the date on which Adams and his wife were to sail for Europe, Adams heard that the defendant and its attorney were threatening to arrest him unless some settlement was made. He immediately went to Mr. Castre, vice-president and a director of the defendant, and a personal friend of Adams and his wife, and talked with him about the arrest, and asked him if he would become his bail. Castre consented to do so, but suggested that some settlement be made with the bank, and that the plaintiff had the means to make such settlement, and advised him to go to the office of the counsel of the bank and make some adjustment of the claim. Adams informed his wife that he had heard he was to be arrested, and she went to see Mr. Castre. She testified to this interview, in substance, as follows: That she asked Mr. Castre if he had heard anything about the arrest, and he said he had; that he had heard it was the intention of the attorney of the bank to arrest her husband on board the

steamer. She asked if her husband had committed any crime, and Castre replied that he had not, but that any man could be arrested, and asked " How would you like to have your husband arrested on Saturday night too late to obtain bail?" That Castre proposed the settlement; advised her not to consult a lawyer, and told her she had nearly money enough in the Irving Savings Bank, and that the pursuit would be withdrawn if the money was paid. She further testified that she was excited, and was willing to make the payment to save her husband.

Plaintiff paid $2,000 to the bank and agreed to pay $2,000 more in monthly installments of $50 each. She paid $400, and then refused to pay more, and subsequently brought this action to recover back the money paid.

Further facts are stated in the opinion.

*John E. Parsons* for appellant. The payments were not made under duress. (*M. Ins. Co.* v. *Meeker,* 85 N. Y. 614; Story on Contracts, § 400; *Knapp* v. *Hyde,* 60 Barb. 80; *Alexander* v. *Pierce,* 10 N. H. 498; *Eddy* v. *Harris,* 17 Me. 340; *Farmer* v. *Walker,* 2 Edw. Ch. 601; *Smith* v. *Rawley,* 66 Barb. 502; *Solinger* v. *Earle,* 82 N. Y. 393; *Haynes* v. *Rudd,* 102 id. 372; 83 id. 253; *Dunham* v. *Griswold,* 100 id. 224; U. S. R. S. § 5132.) The fact that her husband, not herself, was the debtor did not entitle the plaintiff to recover upon the claim that it was paid to prevent her husband's arrest. (*M. Ins. Co.* v. *Meeker,* 85 N. Y. 614.) What the plaintiff claims is, that she agreed to settle her husband's debt to save her husband from a criminal prosecution, this is compounding a felony. (Penal Code, § 125; *Haynes* v. *Rudd,* 83 N. Y. 251; 102 id. 372.) The plaintiff's conduct subsequent to the settlement constituted a ratification of her acts, and should defeat a recovery in this case. (*Flower* v. *Lance,* 59 N. Y. 603; *Schiffer* v. *Dietz,* 83 id. 300, 308; *Acer* v. *Hotchkiss,* 97 id. 395, 406; *Grymes* v. *Sanders,* 93 U. S. 55, 61; *Fields* v. *Bland,* 81 N. Y. 239; *Riley* v. *Sav. Bk.,* 36 Hun, 513.) The court should have granted the motion to dismiss the complaint upon the ground that the complaint did

not state that the alleged threat was of an unlawful arrest. (*Tooker* v. *Arnoux*, 76 N. Y. 397.) It is only concerning their ordinary duties that the declarations of officers of a corporation are admissible against it. (Story on Agency, § 115; *N. B. Co.* v. *Bachman*, 66 N. Y. 261; *F. Nat. Bk.* v. *O. Nat. Bk.*, 60 id. 278, 296.) It was error to charge that before there can be a ratification to prevent her recovering in this action there must be some distinct act of hers, after knowledge of the facts and knowledge by her that she had a right to rescind the agreement. (*Acer* v. *Hotchkiss*, 97 N. Y. 395, 406; *Grymes* v. *Sanders*, 93 U. S. 55 61. 62; *Weed* v. *Weed*, 94 N. Y. 243.)

*Austen G. Fox* for respondent. There was ample evidence that plaintiff had paid the money under duress. (*Fowler* v. *Butterly*, 12 J. & S. 148, 158; *Ingersoll* v. *Roe*, 65 Barb. 346, 355.) To constitute duress in this case it is not necessary that the arrest feared should have been unlawful. (Story's Eq. Jur. [13th ed.] § 239; Adams' Doc. Eq. 182; *Seear* v. *Cohen*, 45 L. T. [N. S.] 589; *Williams* v. *Bayley*, 14 id. 802; *Ingersoll* v. *Roe*, 65 Barb. 346; *Foley* v. *Green*, 21 Cent. L. J. 175; *Clark* v. *Fischer*, 1 Paige, 176, 177; *Foshay* v. *Ferguson*, 5 Hill, 154, 157; *Scholey* v. *Mumford*, 60 N. Y. 498; *Staunton* v. *Jerome*, 54 id. 480; *Schoener* v. *Lissauer*, 36 Hun, 100; 107 N. Y. 111; *Harris* v. *Carmody*, 131 Mass. 51, 54, 55; 26 Alb. L. J. 424; *McPherson* v. *Cox*, 86 N. Y. 473; *Eadie* v. *Slimmon*, 26 id. 9; *Fisher* v. *Bishop*, 36 Hun, 112; *Coffman* v. *L. Bk.*, 5 Lea. 40; *Taylor* v. *Jacques*, 106 Mass. 291; *Jordan* v. *Elliot*, 15 C. L. J. 232; *F. Nat. Bk.* v. *Byron*, 62 Ia. 42; *Smith* v. *Bromley*, 2 Doug. 697; *Wheaton* v. *Hibbard*, 20 Johns. 293; 12 Moak's Eng. Rep. 742; *Richardson* v. *Duncan*, 3 N. H. 511; 26 Barb. 127; 5 Hill, 157; *Williams* v. *Bayley*, L. R. [1 E. and I. App.] 200; *Davies* v. *London*, L. R., 8 Ch. Div. 467; 107 N. Y. 116; 28 U. C. [C. R.] 218; *Lomerson* v. *Johnson*, 44 N. J. Eq. 93.) The defendant did not, at the trial, raise a question whether the parties were *in pari delicto*. The point was not taken below; and,

therefore, cannot be raised on appeal. (*Haynes* v. *Rudd*, 83 N. Y. 251.) Defendant's motion for a new trial was properly denied. (*Fowler* v. *Butterly*, 12 J. & S. 148; *Bennett* v. *Austin*, 5 Hun, 536; *Downs* v. *R. R. Co.*, 56 N. Y. 664.)

BROWN, J. The evidence as to the statements and representations made to the plaintiff to induce her to make the settlement with the bank was conflicting. The jury were, however, entitled to, and upon the defendant's appeal we must assume they did, adopt the view of the transaction properly inferable from the plaintiff's evidence. This evidence justified the inference that the payment to the bank was not the free, unconstrained and voluntary act of the plaintiff, but was induced by the fear of her husband's arrest on the eve of their departure for Europe, and the effect such an act might have upon his health at that time, shattered and feeble from the misfortune that had overtaken him.

It cannot be successfully claimed, in view of the finding of the jury, that Mr. Castre did not act for the bank. Although perhaps not in the first instance a party to any attempt to secure a settlement of the claim from the plaintiff, in all that he did after he was consulted, he acted for the bank, and he testified, "I supposed Mrs. Adams was able to take care of herself. I performed my duty towards the bank in which I was a stockholder and let her look after herself."

The bank having received the proceeds of the settlement, cannot now be heard to deny the agency through which it was obtained. (*Krumm* v. *Beach*, 96 N. Y. 398.)

It is claimed by the appellant that the plaintiff was not entitled to recover if there was a lawful ground for the arrest of her husband, in other words, that a threat of unlawful arrest and imprisonment is necessary to constitute *duress per minas*. This was the strict common-law rule applied in cases where the duress was against the person seeking to be relieved from his contract. But in practice the narrowness of this doctrine was much mitigated, and money paid under practical compulsion was in many cases allowed to be recovered back, as, for example, payment made to obtain goods wrongfully

detained; excessive fees when taken under color of office; excessive charges collected for performance of a duty, etc.

In all such cases there was a moral coercion which destroyed the contract.

The rule cited by the appellant has no application to a case like the present where money has been obtained from a wife by threats to imprison her husband, and none of the cases cited by the appellant so hold. (*Metropolitan Insurance Company* v. *Meeker* (85 N. Y. 614) was a case where the defendant was held to be estopped to deny the validity of a mortgage.

In *Haynes* v. *Rudd* (83 N. Y. 251; 102 id. 372) the decisions went upon the ground that the note was given to compound a felony, and the contract was for that reason illegal. (*Smith* v. *Rowley*, 66 Barb. 502) was decided on grounds similar to *Haynes* v. *Rudd.*

In *Solinger* v. *Earle* (82 N. Y. 393) plaintiff gave the note in suit to induce the defendant to sign a composition of debts of a firm of Newman & Bernhard. The note was transferred to a *bona fide* holder, and having been compelled to pay it, plaintiff brought the suit to recover from defendants the amount paid.

The court held the contract was illegal, and the same rule that would have protected plaintiff in an action on the note by the payees protected the defendant in resisting an action to recover back the money paid on it. *Farmer* v. *Walter* (2 Edw. Ch. 601); *Knapp* v. *Hyde* (60 Barb. 80); *Dunham* v. *Griswold* (100 N. Y. 224); *Quincey* v. *White* (63 id. 370) were actions in which the contract was made by the person against whom the duress was claimed to have been exerted.

It is not an accurate use of language to apply the term duress to the facts upon which the plaintiff seeks to recover. The case falls rather within the equitable principle which renders voidable contracts obtained by undue influence. However we may classify the case, the rule is firmly established that in relation to husband and wife or parent and child each may avoid a contract induced and obtained ·by threats of

imprisonment of the other, and it is of no consequence whether the threat is of a lawful or unlawful imprisonment.

*Eadie* v. *Slimmon* (26 N. Y. 9), is a leading authority on this question. In that case an assignment of a life insurance policy was obtained by threats to prosecute the plaintiff's husband criminally for embezzlement. The husband, whose life was insured, having died, the action was brought to determine the ownership of the money due from the insurance company. Judge SMITH, who delivered the opinion of the court, says: "The assignment from the plaintiff to the defendant was most clearly exacted by a species of force, terrorism and coercion which overcame free agency, in which fear sought security in concession to threats and to apprehensions of injury. It was made as the only way of escape from a sort of moral duress, more distressing than any fear of bodily injury or physical constraint. * * * A deed executed at such a time under such circumstances should be deemed obtained by undue influence and ought not to stand."

Five judges appear to have concurred in the part of the opinion quoted. Judge DENIO concurred on the ground that the policy was not assignable, and Judge WRIGHT dissented. The case was cited as an example of duress of person in *Peyser* v. *Mayor*, etc. (70 N. Y. 501), and as an authority for avoiding a note obtained by duress in *Osborn* v. *Robbins* (36 N. Y. 365). It has frequently been cited in the Supreme Court (*Fisher* v. *Bishop*, 36 Hun, 114; *Haynes* v. *Rudd*, 30 id. 237; *Ingersol* v. *Roe*, 65 Barb. 357; *Schoener* v. *Lissauer*, 36 Hun, 102), and in other states and in the text books, and has thus become a leading authority upon the question under discussion. It is nowhere suggested in that case, either in the facts or in the opinion, that it was necessary to sustain the judgment in favor of the plaintiff that the threat must have been of an unlawful or illegal arrest. For all that appears the husband was guilty of the charge made and on that assumption it is peculiarly like the case at bar. Other authorities sustain the same principle. In *Haynes* v. *Rudd* (30 Hun, 237), it was said: "We think that when threats of law-

ful prosecution are purposely resorted to for the purpose of overcoming the will of the party threatened, by intimidating or terrifying him, they amount to such duress or passion as will avoid a contract thereby obtained." This statement of the law was not disturbed by this court, the reversal being put on other grounds.

In *Schoener* v. *Lissauer* (*supra*) a bond and mortgage was obtained from the mortgagor by the threat that unless it was given, his son, who was charged with embezzlement, would go to state prison. The mortgage was set aside and this court sustained the judgment. After stating the facts, it was said by Judge RAPALLO : " On the merits this judgment is sustained by *Bayley* v. *Williams* (4 Giff. 638 ; L. R., 1 E and I. App. 200) ; *Davies* v. *London Insurance Company* (L. R., 8 Ch. Div. 469). The first case cited by Judge RAPALLO fully sustains the recovery in the case at bar.

In *Harris* v. *Carmody* (131 Mass. 51) a mortgage was obtained from a father on the threat that his son, who was charged with forging his father's name to notes held by the plaintiff, would be sent to the state prison. It was held that the father could avoid the mortgage on the ground that it was made to relieve the son from duress. (See, also, *Taylor* v. *Jaques*, 106 Mass. 291.)

In none of the cases cited was it suggested that the threat, which induced the making of the contract, was of an illegal prosecution or an unlawful arrest, and in most of them it appears that the person charged with the offense was guilty.

The principle which appears to underlie all of this class of cases is, that whenever a party is so situated as to exercise a controlling influence over the will, conduct and interest of another, contracts thus made will be set aside. (1 Story's Eq. Jur. §§ 239–251 ; 2 Pomeroy's Eq. Jur. §§ 942, 943 ; *Lomerson* v. *Johnston*, 44 N. J. Eq. 93 ; *Ingersol* v. *Roe*, 65 Barb. 346 ; *Fisher* v. *Bishop*, 36 Hun, 112 ; 108 N. Y. 25 ; *Barry* v. *Equitable Life Assurance Co.*, 59 id. 587.)

In the last case cited it was said : " When there exists coercion, threats, compulsion and undue influence, there is no voli-

tion. There is no intention or purpose but to yield to moral pressure for relief from it. A case is presented more analogous to a parting with property by robbery. No title is made through a possession thus acquired."

It was not error, therefore, for the court to deny the motion to dismiss the complaint on the ground that there was no evidence that the money was paid under duress. Upon the evidence it was a question of fact whether the agreement was executed, and the money paid in consequence of threats and undue influence. (*Dunham* v. *Griswold*, 100 N. Y. 224.)

If the money was paid by the plaintiff, through fear, produced by Mr. Castre's representations, that if the claim was not settled, her husband would be arrested and imprisoned, the payment was not a voluntary one and the defendant obtained no title to the money received. This question was settled in plaintiff's favor by the verdict of the jury.

The point made by the appellant that the transaction was a compounding of a felony does not appear to be raised by any appropriate exception in the case. It was not suggested on the trial, either in the motion to dismiss or in the requests to charge. There was no instruction asked or given to the jury on the subject. The question is, therefore, not before this court.

Upon the question of ratification the court instructed the jury as follows: "Before there can be a ratification to prevent her recovery in this action there must be some distinct act of hers, after knowledge of the facts and knowledge by her that she had a right to rescind the agreement." An exception was taken to this part of the charge, and the claim is now made that this court should hold, as a matter of law, that plaintiff had waived her claim.

The defendant appears to have acquiesced in the submission of this question to the jury as one of fact for their determination. It was not made one of the grounds of the motion to dismiss. In part, at least, the charge of the court was correct. I do not understand the learned counsel for the appellant to criticise that part of the charge relating to ratification by some act "after knowledge of the facts." If any qualification was

proper in the expression as to her "knowledge * * * that she had a right to rescind," it was the duty of the appellant to suggest it.  A general exception cannot be sustained. (*Smedis* v. *B. & R. B. R. R. Co.*, 88 N. Y. 15 ; *Doyle* v. *N. Y. Eye and Ear Infirmary*, 80 id. 634.)

We have carefully examined the exceptions to the admission of testimony, and while some of the evidence was immaterial we think none of the rulings are of a character to call for a reversal of the judgment.

The judgment should be affirmed, with costs.

All concur, except BRADLEY, J., not voting.

Judgment affirmed.