AMI K. STRANG, APPELLANT, *v.* CATHARINE PETERSON AND OTHERS, RESPONDENTS.

*Duress — a security given, to a third party, in order to raise money with which to compound a crime under threat of the prosecution of a son.*

A payment made through fear of a criminal prosecution of a near relative is made under duress.

A security, which is given by a mother to a third party to obtain money from him, with which to pay the amount due to the creditor of a son whose obligation to pay arose out of a forgery, and to prevent the criminal prosecution of the son, will be void. (DYKMAN, J., dissenting.)

APPEAL by the plaintiff Ami K. Strang from a judgment, entered in the office of the clerk of Westchester county on the 16th day of September, 1889, dismissing the complaint, with costs.

The action was brought for the foreclosure of a bond and mortgage given by the defendant Catharine Peterson for the purpose of securing the payment to Ami K. Strang, the plaintiff, of the sum of $967 and interest. The defendant Catharine Peterson was permitted by the referee, upon the trial of the action, to amend her answer setting up fraud and duress in the procurement of the bond and mortgage, and alleging that they were obtained and executed under an agreement to suppress a criminal prosecution against her son.

The referee, before whom the action was tried, found, among other things, that Herman F. Peterson, who was a son of the defendant Catharine Peterson, the owner of the mortgaged premises, being indebted for the purchase of cattle, made his promissory notes,

payable to the order of Ami K. Strang, and indorsed the same with the name of said Ami K. Strang, and delivered the said notes to Bonnett Miller and Edward B. Brady, respectively, to each of whom he was indebted, without the assent of the said Ami K. Strang, whose name upon said note was forged; that subsequently Strang consented to indorse the above-mentioned notes, provided he could be secured, and at the suggestion of some of the parties Strang called on the defendant Catharine Peterson to learn if she would give a bond and mortgage on her real estate to secure him, the said Strang, for his indorsement of said notes, which she was finally induced to do, and in consequence thereof the bond and mortgage in question was executed by her to the plaintiff, with the understanding that if she gave such bond and mortgage the parties interested in said forged notes would refrain from prosecuting her son criminally for such forgeries; but that if she did not give such bond and mortgage, her son would then be prosecuted.

*Travis & Smith,* for the appellant.

*Eugene B. Travis,* for the respondent Catharine Peterson.

*Elbert P. James,* for the respondents Whitney and White.

Pratt, J.:

It is entirely clear that the motive impelling Mrs. Peterson to make the mortgage in suit was her belief that her son had been guilty of forgery and would be punished criminally if she did not secure the debt. The referee has found that the son was thus guilty, and that a prosecution therefor was stopped by the giving of the mortgage. There is abundant evidence to sustain the referee's conclusion. It is now suggested by plaintiff that the referee was in error in this finding. That he should have given faith to the testimony that Peterson was authorized to place Strang's name on the note, in which case no crime had been committed and the course of justice was not interfered with by giving the mortgage. But such facts would not make the mortgage valid. *Eadie* v. *Slimmon* (26 N. Y., 9) is authority that fear of a prosecution of a near relative is such duress that a security obtained by means thereof cannot stand. *Bayley* v. *Williams* (4 Giff., 638; affirmed, *Williams* v. *Bayley,*

1 H. L. [Eng and Irish App.], 200), is to the same effect.    (See, also, Pollock on Contracts, 557.)

The judgment should be affirmed, with costs.

BARNARD, P. J., concurred.

DYKMAN, J. (dissenting) :

This is an action to foreclose a mortgage made by Catharine Peterson to the plaintiff. Catharine Peterson answered the complaint, setting up her coverture and the consequent invalidity of the bond and mortgage, and denied the execution of those instruments with knowledge of their character.

The administrators of Seth Whitney were afterwards brought in as defendants, and they served an answer denying that they had any lien upon the mortgaged premises subsequent to the lien of the plaintiff's mortgage and claiming priority of lien for a mortgage which they held.

In this state of the pleadings the action went to a referee to be tried and determined, and during the progress of the trial, Catharine Peterson and the administrators of Whitney were permitted by the referee, against the objection and exception of the plaintiff, to amend their answers by setting up fraud and duress in the procurement of the bond and mortgage, and that they were obtained and executed under an agreement to suppress a criminal prosecution for forgery against the son of Catharine Peterson.

The trial was then continued under the new pleadings, and the referee decided in favor of the defendants and dismissed the plaintiff's complaint.

The allowance of the amendment to the answers by the referee upon the trial was clearly erroneous. New issues were thereby introduced into the case which entirely changed the character of the defense, and that is inadmissible upon the trial.

We will make no further examination of that error, however, as our view of the whole case is essentially different from that of the referee who rendered the judgment.

The material facts are these : Herman F. Peterson, the son of Catharine F. Peterson, the mortgagor, was a butcher, and prior to March 13, 1880, the date of the mortgage in question, Herman became indebted to Bonnett Miller and Edward B. Brady in consider-

able sums for cattle purchased of them, respectively, and for such indebtedness he had made his promissory notes to each of them, payable to the order of the plaintiff, Ami K. Strang, and indorsed them himself with the name of Strang and delivered the same to Miller and Strang, respectively. Such indorsements were forgeries.

When it became known that Strang denied the authenticity of the indorsements upon these notes, the holders began to demand payment or security, and used language indicative of a purpose to invoke the aid of the criminal law if some arrangement was not made for the payment of their claims.

Under pressure of those circumstances, Herman endeavored to induce Strang to take an assignment of some claims of his and assume the payment of the notes, which Strang declined to do. Then Strang, at the request of Herman, had an interview with his mother, and an arrangement was made by which she was to give Strang a mortgage upon her property and he was to undertake the payment of the notes. In pursuance of that arrangement the mortgage in suit was executed and delivered to Strang and he paid the notes. Upon this subject the finding of the referee is, that Strang called upon the mortgagor to learn if she would give him a mortgage on her real estate to secure him for his indorsement of the notes, and she finally consented to do so.

The referee has found that the bond and mortgage were made under an agreement that their execution would prevent the prosecution of her son criminally for the forgeries of the indorsements of Strang, and that the parties interested in such notes would refrain from such prosecution; and that the only consideration to her for giving the bond and mortgage was to save her son from such prosecution.

Assuming, as we may, that the referee intended to find that the execution of the bond and mortgage was induced and obtained by threats of imprisonment of the son of the mortgagor, then she could avoid those instruments if they had been given to the creditors of her son to secure the payment of his liabilities to them. (*Adams* v. *Irving National Bank*, 116 N. Y., 606; *Eadie* v. *Slimmon*, 26 id., 9.)

This case, however, is not like that of Adams and others of a kindred character, for in all those cases where the doctrine has been

applied the threats of arrest have proceeded from the creditors, and the payments have been made or the securities executed to them. Here the case is very different. Strang had nothing at stake, and no reason to institute criminal proceedings against Herman. The spurious paper was not passed upon him and the forgery gave him no concern. If the criminal law was to be set in motion, the creditors alone were interested in its movement. He simply agreed to assume the payment of the notes upon receiving security for the assumption of such liability. In substance and legal effect, he agreed to make a loan of money to discharge the debts evidenced by the notes, and he made the loan in reliance upon the security he received, and the purpose of the loan or the use to which the money was to be appropriated was a matter of entire indifference to him. Suppose the bond and mortgage had been made to another person, they could not be avoided because their execution was induced by a desire to raise money to prevent the arrest and imprisonment of the son of the mortgagor, and we suppose the same rule applies to Strang. He has been induced to make a loan in reliance upon the bond and mortgage, and the mortgagor having thus obtained his money should not now be permitted to repudiate the transaction.

The question of priority between the two mortgages must be settled upon another trial. It must be borne in mind that this is not a case of the composition or compounding of a felony, and the decision proceeds upon no such ground, and is not in hostility to the decisions in the cases where that question has been involved.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Judgment affirmed, with costs.