<hr />

THE JEWELERS' LEAGUE of the City of New York, Plaintiff, *v.* ELLEN B. DE FOREST, Appellant; ANNA B. DE FOREST, Respondent.

*Duress — contracts, when set aside — what is, and what is not, duress.*

The nullification of instruments obtained by fraud, duress or undue influence is a well-recognized head of equity jurisprudence; contracts when procured by fear or undue influence will also be set aside by the civil law.

When a person does an act or makes a contract while he is under the influence of extreme terror or apprehension short of duress, relief will be administered, for

in such cases the person doing the act or making the contract has no free will but stands *in vinculis.*

It is essential, in order to disaffirm a contract as having been made under duress, to show that the person making the same was either placed under apprehension of injury or subjected to intimidation.

At the solicitation of the widow of a decedent, his mother executed to her at St. Louis an assignment of her interest in a life insurance policy, for $5,000, upon the life of the deceased. After the execution thereof the mother and widow and a friend of the widow started for the east with the body of the deceased. Upon reaching Albany the widow and her friend desired the mother to acknowledge the execution of the assignment, and upon her hesitating to do so, they threatened to take the body back to St. Louis for interment. Thereupon the mother made the acknowledgment. Two days afterward the mother executed a power of attorney to the friend of the widow, authorizing the pursuit of the proper measures for the collection of the money, and on the following day (December thirtieth) an agreement was made between the parties that the mother should receive $500 of the insurance fund and the widow the rest. The mother then executed an instrument in writing by which, in consideration of that sum, she agreed to facilitate the widow in the collection of the money.

*Held,* that the deceased's mother was not at any time subjected to such influence as would overcome her free agency ; she was never terrorized in any way and never was intimidated by the apprehension of any serious evil, neither was there any constraint over her person nor was she placed in terror of any personal injury ;

That the agreement of December thirtieth was a ratification of the former assignment as thereby modified.

APPEAL by the defendant Ellen B. De Forest from that part of a judgment of the Supreme Court in favor of the defendant Anna B. De Forest, entered in the office of the clerk of the county of Kings on the 14th day of March, 1894, upon the decision of the court rendered after a trial at the Kings County Special Term which directs the payment of certain moneys to Anna B. De Forest.

*Abel Crook,* for the plaintiff.

*Rochfort & Stayton,* for defendant, appellant.

*Charles N. Judson,* for defendant, respondent.

DYKMAN, J. :

This is an action of interpleader brought by a mutual benefit association to determine conflicting claims to the sum of $5,000, the

amount due upon a certificate of membership of one Charles S. De Forest, who died in December, 1892.

In his application for membership he designated his mother, Ellen B. De Forest, as the beneficiary to whom the money was to be paid. Subsequently he so far modified that designation as to provide that his wife, Anna B. De Forest, should receive the money if his mother predeceased him.

The mother and wife are both defendants in this action, and each claims the money, the mother as the designated beneficiary, and the wife as the assignee of the fund under an assignment made by the mother. The mother now repudiates the transfer and alleges that it was obtained from her by duress and undue influence.

The assignment of the money was executed at St. Louis, December 25, 1892, and down to that time only solicitation had been employed for its procurement. After the execution the parties started for the east with the body of the deceased, and upon reaching Albany the wife and a friend who accompanied her desired the mother to acknowledge the execution of the assignment. Upon her hesitating to do so the wife threatened to take the body back to St. Louis for interment if she did not do so, and thereupon the mother made the acknowledgment. That was December 27, 1892.

The party then proceeded to Birmingham, in Connecticut, where the body was buried December 28, 1892, as we gather the dates.

The next day the mother executed a power of attorney to the friend of the wife, authorizing the pursuit of the proper measures for the collection of the money. On the 30th day of December, 1892, an agreement was made between them that the mother should receive $500 of the fund and the wife the rest, and the mother then executed an instrument in writing by which, in consideration of that sum, she agreed to facilitate the wife in the collection of the money.

The nullification of instruments obtained by fraud, duress or undue influence is a well-recognized head of equity jurisprudence, and the civil law also sets aside contracts procured by fear or undue influence. (Domat Civil Law, book 1, tit. 18, § 2, arts. 1–10.)

Judge STORY says relief is administered in such cases to a party " where he does an act or makes a contract when he is under duress or the influence of extreme terror, or of threats or apprehensions

short of duress. For in cases of this sort he has no free will, but stands *in vinculis*." (1 Story Eq. Juris. [10th ed.] § 239.)

We do not find that the mother in this case was at any time subjected to such influence as would overcome her free agency. She was never terrorized in any way, and she never was intimidated by the apprehension of any serious evil. There was no constraint over her person, and she was not placed in dread of any personal injury.

At St. Louis, where the first paper was signed, there was no threat of any kind made to her. At Albany the only threat was to take the body of the dead son back to St. Louis. If that operated upon her affections it could not have operated upon her fears or constrained her will. She was neither placed under apprehension of injury nor subjected to intimidation, and that seems to be essential within all the authorities.

Independent of the foregoing, the agreement of December 30, 1892, seems to have been entirely consensual and voluntary, and must be deemed a ratification of the former assignment with the modification which secured $500 of the fund for the mother.

The leading case on the subject in this State is *Eadie* v. *Slimman* (26 N. Y. 9), and the latest case is *Adams* v. *The Irving National Bank* (116 id. 606).

Both of those cases manifest the severity with which courts of equity scrutinize transactions in which covenants or written instruments have been obtained by threats or undue influence, but the facts in this case do not bring it within the scope of the decision in either of the cases.

The judgment should be affirmed, with costs.

BROWN, P. J., concurred; CULLEN, J., not sitting.

Judgment affirmed, with costs.